IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIEGO FERNÁNDEZ-SANTOS,

**Petitioner,**

**v.**

UNITED STATES OF AMERICA,

**Respondent.**

**Civil No.** 17-2331 (FAB)
related to
**Criminal No.** 14-225 (FAB)

OPINION AND ORDER

BESOSA, District Judge.

Diego Fernández-Santos ("Fernández") is serving a 76-month term of imprisonment for drug-trafficking and unlawful firearm possession. (Crim. Docket No. 99.)[1]  Before the Court is Fernández's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. section 2255 ("section 2255").  (Docket No. 12.)  For the reasons set forth below, the section 2255 motion is **DENIED**.

I.   **Background**

On February 13, 2014, federal law enforcement officers executed a search warrant at Fernández's residence.  (Crim. Docket No. 84.)  The officers seized a firearm, cocaine, and drug paraphernalia.  Id.  Subsequently, a grand jury returned a three-

---

[1] "Crim. Docket" and "Civil Docket" refer to Criminal Case No. 14-224 and Civil Case No. 17-2331, respectively.

count indictment charging Fernández with possession of narcotics with intent to distribute, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm by a convicted felon, in violation of 21 U.S.C. section 841(a)(1), and 18 U.S.C. sections 924(c) and 922(g)(1), respectively. (Crim. Docket. No. 1.)

Trial commenced on June 9, 2014. (Crim. Docket No. 52.) Before the United States rested, however, Fernández pled guilty to all counts in the indictment. (Crim. Docket No. 53.) He then moved to withdraw his guilty plea. (Crim. Docket No. 72.) The Court denied this motion. United States v. Fernández, 136 F. Supp. 3d 160 (D.P.R. 2015) (Besosa, J.). Fernández received a concurrent sentence of 16 months imprisonment as to counts one and three, and a consecutive sentence of 60 months imprisonment as to count two. (Crim. Docket. No. 110.)

The Court had previously placed Fernández on supervised release regarding a prior drug conviction. Crim. Docket No. 86 at p. 8; see Crim. No. 11-240, Docket No. 122. Because the offenses committed by Fernández in Criminal Case No. 14-255 violated the conditions of his supervised release, the Court also imposed a consecutive sentence of 24 months imprisonment for the revocation. (Crim. Docket No. 108 at p. 20.)

On appeal, Fernández asserted that the Court committed two errors.  First, he argued that the consecutive sentence for the revocation of supervised release was unreasonable.  United States v. Fernández-Santos, 856 F.3d 10, 20 (1st Cir. 2017).  Second, Fernández purportedly pled guilty without understanding the charges set forth in the indictment.  Id. at 20.  The First Circuit Court of Appeals affirmed the criminal disposition *in toto*.  Id. at 22.

On November 30, 2017, Fernández filed a *pro se* motion to vacate the 76-month sentence, contending that he received ineffective assistance of counsel.  (Civil Docket No. 1.) Fernández also moved for a "change of venue," requesting that the Court recuse itself from this proceeding.  (Civil Docket No. 2.) The United States responded to both motions.  (Civil Docket Nos. 14 & 15.)  Fernández replied.  (Civil Docket No. 17.)

## II.  The Section 2255 Motion

Section 2255 embodies the common law writ of *habeas corpus*, an extraordinary remedy for "convictions that violate fundamental fairness."  Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) (citation and quotation omitted).  Pursuant to section 2255, a prisoner in federal custody may move "to vacate, set aside or correct [his or her] sentence."  28 U.S.C. § 2255(a).  "[T]he statute provides for post-conviction relief in four instances,

Civil No. 17-2331 and Criminal No. 14-225 (FAB)                4

namely, if the petitioner's sentence (1) was imposed in violation
of the Constitution, or (2) was imposed by a court that lacked
jurisdiction, or (3) exceeded the statutory maximum, or (4) was
otherwise subject to collateral attack." David v. United States,
134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States,
368 U.S. 424, 426-27 (1962)).

The applicable statute of limitations is one year, beginning
on the date that "judgment of conviction becomes final." 28 U.S.C.
§ 2255(f)(1); see Barreto-Barreto v. United States, 551 F.3d 95,
100 (1st Cir. 2008) (holding that "the limitations period 'shall
apply' to all motions made under § 2255").[2]  For petitioners who
appeal to the Supreme Court of the United States, judgment is final
when *certiorari* is denied, or the conviction is affirmed. Derman
v. United States, 298 F.3d 34, 41 (1st Cir. 2002) (citing Kapral
v. United States, 166 F.3d 565, 577 (3d Cir. 1999)).  Because
Fernández did not seek *certiorari* review, the limitations period
commenced "when the time [expired] for. . . contesting the
appellate court's affirmation of the conviction." Ramos-Martínez

---

[2] Three additional contingencies trigger the one-year limitations period, all
of which are irrelevant for purposes of this Opinion and Order. See, e.g., 28
U.S.C. § 2255(f)(2) ("The date on which the impediment to making a motion
created by governmental action in violation of the Constitution or laws of the
United States is removed, if the movant was prevented from making a motion by
such governmental action.").

Civil No. 17-2331 and Criminal No. 14-225 (FAB)                5

v. United States, 638 F.3d 315, 320-21 (1st Cir. 2011) (citing

Clay v. United States, 537 U.S. 522, 525 (2003)).

The First Circuit Court of Appeals affirmed Fernández's
conviction and sentence on May 1, 2017.  Fernández-Santos, 856
F.3d 10, 14.  A petition for a writ of certiorari "is timely when
it is filed with the [Clerk of the Supreme Court] within 90 days
after entry of judgment."  See Sup. Ct. R. 13.1.  The period of
limitations began on July 30, 2017, the deadline for Fernández to
seek certiorari review.  See, e.g., United States v. Cheng, 392 F.
Supp. 3d 141, 150 (D. Mass. 2019).  The Bureau of Prisons mail
service received Fernández's habeas petition on November 6, 2017.
Civil Docket No. 12, Ex. 3; Casanova v. Dubois, 304 F.3d 75, 79
(1st Cir. 2002) ("[We] adopted the prisoner mailbox rule for §
2254 and § 2255 filings").  Accordingly, the section 2255 motion
is timely.

## A. Procedural Default

Section 2255 is not a substitute for a direct appeal.
Foster v. Chatman, 136 S. Ct. 1737, 1758 (2016).  "[A]s a general
rule, federal prisoners may not use a motion under 28 U.S.C. §
2255 to relitigate a claim that was previously rejected [by the
appellate court]."  Id. (citations omitted.)  Moreover,
"[c]ollateral relief in a § 2255 proceeding is generally
unavailable if the petitioner has procedurally defaulted his claim

by failing to raise the claim in a timely manner at trial or on direct appeal." Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (quotation marks and citations omitted.)  Relief for claims not raised at trial or on direct appeal is inappropriate unless the petitioner can demonstrate both (1) cause for the procedural default, and (2) actual prejudice resulting from the error asserted.  Id.; United States v. Frady, 456 U.S. 152, 167-68 (1982).

Generally, postconviction relief requires a "sufficient showing of fundamental unfairness." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994).  An ineffective assistance of counsel claim is, however, an exception to this rule. Massaro v. United States, 538 U.S. 500, 509 (2003) (holding that "failure to raise an ineffective-assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceedings under § 2255"); see Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016) ("A claim of ineffective assistance of counsel, rooted in the Sixth Amendment, may be raised by means of a section 2255 motion.").  Because Fernández claims that he received ineffective assistance of counsel, the Court will adjudicate the section 2255 motion on the merits.  see e.g., Lasalle-Velázquez v. United States, 948 F. Supp. 2d 188 (D.P.R. 2013) (holding that the procedural default doctrine did not

preclude the Court from addressing the petitioner's ineffective assistance of counsel claims) (Fusté, J.).

### B. Defense Counsel's Purported Failure to Challenge Judicial Participation in Plea Negotiations

Fernández is dissatisfied with trial and appellate counsel. Attorney Humberto Guzmán-Rodríguez ("Guzmán") allegedly "coerced" Fernández to plead guilty. (Civil Docket No. 1, Ex. 1 at p. 9.) On appeal, attorney José Gaztambide-Añeses ("Gaztambide") purportedly failed to raise claims pertaining to judicial participation in plea negotiations. Id. at p. 7.

The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions "the accused shall enjoy the right to [. . .] the Assistance of Counsel for his defence." U.S. CONST. amend VI.  The principles set forth in Strickland v. Washington, 466 U.S. 668 (1984), govern ineffective assistance of counsel claims.  See Rojas-Medina v. United States, 924 F.3d 9, 16 (1st Cir. 2019).  Fernández must establish by a preponderance of the evidence that: (1) counsel's performance "fell below an objective standard of reasonableness," and (2) that this deficient performance resulted in actual prejudice.  Strickland, 466 U.S. at 687.  The Court presumes that "counsel's strategy and tactics fall within the range of reasonable professional assistance." Knight

v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).

The Sixth Amendment "does not guarantee [Fernández] a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991). The Strickland analysis is "highly demanding" and places a "heavy burden" on Fernández. Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (citing Williams v. Taylor, 529 U.S. 362, 393 (2000)).

## C. Federal Rule of Criminal Procedure 11

The effective assistance of counsel claim is based on Federal Rule of Criminal Procedure 11 ("Rule 11"). (Civil Docket No. 1, Ex. 1.) This rule prohibits the Court from participating in plea negotiations. Fed. R. Crim. P. 11(c). According to Fernández, Guzmán acquiesced to the purported Rule 11 violations at trial. (Civil Docket No. 1, Ex. 1.) Gaztambide allegedly omitted the Rule 11 error from the appellate brief. Id.

Judicial intervention in the plea negotiations process presents a "high and unacceptable risk of coercing a defendant to accept the proposed agreement." United States v. Bierd, 217 F.3d 15, 18 (1st Cir. 2000) (no Rule 11 violation when the judge at sidebar during trial stated "why doesn't [defendant] plead out,

get the three levels he's entitled to and then that will accomplish

the severance, but that's not for me to say."). Moreover, Rule 11

"preserves the judge's impartiality both during and after the plea

negotiations." United States v. Bradley, 455 F.3d 453, 460 (4th

Cir. 2006) (internal quotation marks and citation omitted).

**D. The Alleged Rule 11 Violation**

Fernández maintains that the Court participated in plea

negotiations on the first and second days of trial. (Civil Docket

No. 1, Ex. 1.) On June 9, 2019, defense counsel requested an *ex

parte* sidebar before opening statements. (Crim. Docket No. 84 at

p. 52.) After a brief discussion with defense counsel, the Court

requested the United States to approach the bench. Id. at 54.

The following exchange occurred:

> **Court:** This is not what [defense counsel] came up here
> for, but I asked him if his client would be
> willing to plead, now that the statements will go
> in, and I would give him three points for
> acceptance to plead as to what you had originally
> offered.

> **Defense Counsel:** The last time.

> **Court:** Count Two

> **United States:** The 924(c) count.

> **Court:** Yes.

> **United States:** Is he willing to do that?

> **Court:** Well, he hasn't talked to him yet. He said he is
> going to give him the tenth try.

**United States:** I know.

**Defense Counsel:** She knows.

**Court:** All right [*sic*].  We will continue, and you can talk to him.

**Defense Counsel:** Thank you, Your Honor.

**United States:** Well, we are going to continue with the trial, or is he going to talk to him real fast?

. . .

**Court:** All right [*sic*]. Let's start at 2:30.

**Defense Counsel:** Very well.  So I will speak to my client now.

**Court:** Tell him that I think it's a good deal.

**Defense Counsel:**   His concern is the other count of violation of the supervision.

**Court:** Well, there is nothing I can do about that because that's consecutive.

**United States:** And I am just asking, Your Honor, isn't it a fact that by law, if he were to be found guilty of the felon in possession charge, that would be consecutive to the 924(c)?

**Court:** Yes, but what –

**United States:** No.  I am just thinking if he were not to choose not to go – not the accept the plea.

**Court:** I don't know.

**United States:** Something has to be checked.

**Court:** If he goes to trial, then he has the drug count, the 924(c) is consecutive.  And what [the United States] says is the felon in possession may be consecutive too.

**United States:**  I believe research was made by the office and –

**Court:** You may want to tell him that.

**United States:**  That's why I asked the question.

**Court:** Whatever the guideline is, plus 60.

**United States:** And the revocation proceeding.

**Court:** Plus to revocation hearing.

**Defense Counsel:** Why 60?  Felon in possession is 60?

**United States:**  No, the 924(c).  Minimum of 60, up to life

**Court:**  So it would be the drug charge, the felon in possession, which I am not sure whether that would be grouped.

**Defense Counsel:**  No, the 924(c).  Minimum of 60, up to life.

**Court:**  So it would be the drug charge, the felon in possession which I am not sure whether that would be grouped.

**Defense Counsel:** I think it is grouped Your Honor, but I will do my double checking.

**United States:**  I am just thinking because statutorily it says under the law that it's consecutive to any other federal crime, so I would think it is consecutive.

**Court:**  So it's 924—

**United States:**  Under 924(c)(1)(A), the law specifies

that it has to be consecutive.

**Court:** Yes, but the question is whether the felon in possession is consecutive to the drug charge.

**United States:** Oh, I don't know – that would be in the Court's discretion. I think it definitely is consecutive.

**Court:** Well, you can tell him that.

**United States:** But it's definitely consecutive to the 924(c).

**Court:** I understand that. But the 922(g) may not be grouped with the drug charge. I am not sure. So you may want to tell him that. First of all, it may not be grouped, and, second of all, the judge has discretion to make it consecutive.

**Defense Counsel:** I need privacy, Your Honor.

**United States:** I can say that, based on the information I was told – obviously, I will have to verify that, but the Government will be seeking – is arguing for it to be consecutive.

**Court:** Plus the revocation, and that certainly is consecutive.

**Defense Counsel:** I know.

**United States:** But the revocation proceedings is independent and –

**Court:** That's consecutive.

**Defense Counsel:** But what will have to be on the merits. I will not be stipulating to that.

**Court:** No, of course not. If you want to have an evidentiary hearing on the revocation, we can do that.

**Defense Counsel:** Okay, but not today.

**Court:** No. So speak to your client.

**Defense Counsel:** Thank you, Your Honor.

(Crim. Docket No. 84 at pp. 54-58.)

On the second day of trial, defense counsel questioned whether the United States remained interested in a plea agreement. (Crim. Docket No. 85 at p. 3.) The United States responded that "at this point . . . the only option for the Defendant is to make a straight plea. Yesterday he had the opportunity [to accept the offer]." Id. at p. 5. Fernández proposed, however, to plead guilty if the sentence for violating the conditions of supervised release occurred concurrently to counts set forth in the indictment. Id. The United States countered that Fernández "can do a straight plea, and [it would] not make any specific recommendation in the revocation." Id. at p. 4. The Court stated that Fernández would receive three points for acceptance of responsibility if he pled guilty at all counts. Id.

The Court, the United States, and defense counsel then discussed the United States Sentencing Guidelines. Id. at pp. 5—10. Trial recessed while a guideline specialist from the United States Probation Office examined whether the revocation of supervised release resulted in a mandatory consecutive sentence.

Id. This specialist informed the Court and litigants that the sentence for the violation of supervised release must be served concurrent to the section 924(c) count. Id. Defense counsel confirmed that his client's sentence "would be 86 versus 93; 86 with a straight plea versus 93 with a verdict." Id. at p. 11.

The Court granted defense counsel's request to confer with Fernández, and to contact the supervisor of the Assistant United States Attorneys in an attempt to revive the plea offer. Id. at p. 13. After a two-hour recess, defense counsel disclosed that Fernández "reached an agreement with the Government. He is going to enter a straight plea." (Crim. Docket No. 86 at p. 2.) Although defense counsel referred to an "agreement," Fernández entered a straight plea of guilty. The parties did not enter into a plea agreement. The Court subsequently conducted a Rule 11 colloquy. Id.

### 1. The Rule 11 Claim is Unavailing

Fernández maintains that the Court "set the terms and conditions of the plea agreement." (Civil Docket No. 1, Ex. 1 at p. 5.) He cites a litany of alleged Rule 11 violations: (1) the "good deal" comment from the first day of trial, (2) the acceptance of responsibility remark, and (3) that defense counsel provided false information. Id. at pp. 3—6.

The "good deal" comment does not contravene Rule 11.

The First Circuit Court of Appeals addressed an analogous argument in United States v. Pagán-Ortega, 372 F.3d 22 (1st Cir. 2004). The district court stated that the plea offer constituted a "super break" and "good deal." Pagán-Ortega, 372 F.3d at 27.   The defendant pled guilty.   Id.  He subsequently appealed, asserting that the district court violated Rule 11.   Id.   The Pagán-Ortega court rejected this proposition.   Although the "comments about 'super break' and 'good deal' admittedly could have exercised a considerable influence upon the [defendant, they] were clearly related to the factual and compelling comparison with the risk of conviction following trial." Id. at 28.   The "good deal" comment by this Court referred to the disparity between a plea agreement and a trial verdict.   Indeed, the Court afforded defense counsel and the United States with additional time to negotiate a plea agreement after obtaining the approximate sentencing guideline range.

The section 2255 motion assails the Court's comment regarding the three points for acceptance of responsibility. (Civil Docket No. 1, Ex. 1 at p. 5.)   The statement informed Fernández that a guilty conviction precluded him from receiving this deduction.  It was not, however, interference in plea negotiations.   See United States v. Martin, Case No. 15-10726, 651 F. Appx. 265, 266 (5th Cir. June 7, 2016)(holding that the

following comment did not violate Rule 11: "And if you were to plead guilty today under these circumstances, I would give you the two points for acceptance [of responsibility]."). In fact, the Court continued trial to seek guidance from a sentencing specialist, enabling Fernández to make an informed decision regarding a putative plea agreement. Ultimately, Fernández faults the Court with providing him with the pertinent sentencing information.

Fernández asserts that defense counsel "lied to [him] about the twenty-year sentence." (Civil Docket No. 1, Ex. 2 at p. 4.) The mandatory maximum sentence for violating 21 U.S.C. section 841(a)(1) (count one) is, however, a term of twenty-years imprisonment. Crim. Docket No. 86 at p. 10; see 21 U.S.C. § 841(b)(1). The Court disclosed this fact to Fernández at the change of plea hearing. Id. He now claims that defense counsel forced him to plea, but this decision rested solely with Fernández. See Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003) ("Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of conviction."). Because the allegations of judicial participation in plea negotiations have no

basis in fact or law, the Rule 11 argument is unavailing.

> **2. Fernández Failed to Demonstrate that But for the Alleged Rule 11 Violation, He Would Have Continued to Stand Trial**

Even if the Court participated in plea negotiations, postconviction relief pursuant to Rule 11 is unwarranted.  In United States v. Dávila, the United States Supreme Court rejected the proposition that judicial involvement in plea negotiations necessarily invalidates a guilty plea.  133 S. Ct. 2139, 2148 (2013) ("Nothing in Rule 11's text . . . indicates that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur of the plea without regard to case-specific circumstances.").  In reviewing Rule 11 motions, "particular facts and circumstances [. . .] should be assessed, not in isolation, but in light of the full record." Id. at 2148-49.  The relevant question, after examining the entire record, is whether it was reasonably probable that, but for the judge's involvement, the defendant would have exercised his right to a jury trial.  Id.

Fernández fails to demonstrate or allege that but for the purported Rule 11 violation, he would have continued to stand trial.  As a preliminary matter, Fernández claims that he "never knew about the sidebar conversations between the judge and the attorney until [he] received the Appellate brief."  (Civil Docket No. 1, Ex. 2 at p. 2.)  The Court cannot discern how unknown Rule

11 violations influenced Fernández to change his plea.  If he only learned about purported judicial participation in plea negotiations after trial, how did the Rule 11 violation induce him to plead guilty?

According to Fernández, he changed his plea for two alternative reasons.  First, defense counsel "forced" him to plead guilty because the Court applied "pressure." (Civil Docket No. 1, Ex. 1 at p 8.)  Second, Fernández allegedly "had to plead guilty or my mother would be arrested and that would kill her." (Civil Docket No. 1, Ex. 2 at p. 4.)  He fails to address, however, whether defense counsel's advice derived from a sound assessment of the evidence, or whether family related considerations motivated the motion for a change of plea.  Other than *post-hoc* allegations, the record is devoid of evidence suggesting that Fernández would have proceeded with trial but for judicial participation in plea negotiations.  See Posey v. United States, Case No. 20-121, 2020 U.S. Dist. LEXIS 78874 at *26-27 (M.D. Tenn. May 5, 2020) ("And in this case, there is no reason to believe that, contrary to what Petitioner said in his plea agreement and plea hearing – confirming the voluntary, unpressured, fully advised and fully counseled nature of his plea of guilty – a reasonably probability exists that he actually would not have pled guilty but for the district judge's alleged Rule 11 participation

Civil No. 17-2331 and Criminal No. 14-225 (FAB)          19

violation."); United States v. Thompson, 770 F.3d 689, 698 (8th Cir. 2014) (holding that the defendant's Rule 11 motion lacked merit because "even during the sentencing hearing, [he] failed to give any indication that the district court had led him to expect a particular sentence in exchange for pleading guilty").

The Rule 11 colloquy conducted by the Court established that Fernández knowingly and voluntarily pled guilty. See Fernández-Santos, 136 F. Supp. at 164. At the change of plea hearing, the Court asked Fernández the following question: "Do you understand that you can maintain that plea of not guilty, and we will continue with trial against you?" (Crim. Docket No. 86 at p. 6.) Fernández answered "yes." Id. The Court also questioned whether Fernández moved to change his plea "because someone forced [him]" to do so. Id. at p. 16. Fernández answered "no." Id. His statements under oath at the change of plea "carry a strong presumption of verity," because "it is the policy of the law to hold litigants to their assurances." United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997) (citations omitted). Accordingly, the Court accepts the assertions Fernández made at his change of plea hearing as true.

The strength of the evidence against Fernández is an additional motivation for the change of plea. See United States v. Oakes, 411 F. Supp. 2d 1, 4 (D. Me. 2006) ("Often the decision

to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.") (citing Brady v. United States, 397 U.S. 742, 756 (1992). The Court denied Fernández's motion to suppress statements made by him on the date of his arrest. (Crim. Docket No. 49.) These admissions incriminate Fernández, serving as powerful evidence at trial. (Crim. Docket No. 49.) For instance, Fernández informed law enforcement officers that "there was a weapon behind the washing machine" before they searched the residence. (Crim Docket No. 83 at p. 13.) The jury heard testimony regarding this statement and a detailed account of the contraband he possessed in violation of various federal statutes. (Crim. Docket No. 84 at p. 67.). Physical evidence against Fernández included, *inter alia*, three magazines, ten rounds of .38 caliber ammunition, five rounds of 9mm caliber ammunition, drug paraphernalia, and cocaine. (Crim. Docket No. 11 at p. 1.) Indeed, Fernández possessed legitimate incentives to plead guilty. See Williams v. United States, 879 F.3d 244, 249 (7th Cir. 2018) (Although the defendant "insisted that but for the Judge's Rule 11(a)(1) violation, he would not have accepted the government's plea offer," the Seventh Circuit Court of Appeals held that the "overwhelming evidence against [the defendant] and the prospect of a mandatory life term [negated his]

hindsight claim that he would have rejected such exceptionally favorable terms").  In sum, Fernández pled guilty because he concluded that doing so aligned with his best interests.

### 3. The Ineffective Assistance of Counsel Claim against Guzmán and Gaztambide is Meritless

Because the Rule 11 violation is unsubstantiated, the ineffective assistance of counsel claim is meritless.  See, e.g., United States v. Rector, Case No. 08-50015, 2013 U.S. Dist. LEXIS 156937 at *29 (W.D. Ark. Nov. 1, 2013) ("For the foregoing reasons, the Court finds that there were no Rule 11(c) violations.  It cannot, therefore, have been ineffective assistance of counsel for [the defendant's] attorneys not to object to any Rule 11(c) violations.")  Guzmán and Gaztambide are not ineffective by failing to set forth frivolous arguments.  See Jones v. Barnes, 463 U.S. 745, 754 (1983); Cofske v. United States, 290 F.3d 437, 444-45 (1st Cir. 2002)  (holding that appellate counsel was not ineffective for foregoing an argument that "was not especially promising").  An attorney need not raise baseless claims, and failure to do so does not render his or her legal assistance ineffective.  See Acha v. United States, 910 F,2d 28 (1st Cir. 1990); Brown v. United States, 42 F.Supp.2d. 122, 131 (D.P.R. 1998).  Accordingly, the section 2255 motion is **DENIED**.

## III. The Motion to Recuse

Fernández requests that the Court recuse itself from this proceeding pursuant to a "motion to change venue." (Civil Docket No. 2.)  This motion cites a nebulous "due process" basis for disqualification.  The relevant recusal statutes are 28 U.S.C. sections 144 and 455 ("section 144" and "section 455," respectively). See 28 U.S.C. §§ 144 & 455.

Defendants possess a "due process right to be tried before an impartial judge – a fundamental right essential to a fair trial." Mitchell v. Sirica, 502 F.2d 375, 390 (D.C. Cir. 1974); see Tumey v. Ohio, 273 U.S. 510, 535 (1927) ("No matter what the evidence was against him, [the defendant] has the right to have an impartial judge"). The allegations contained in Fernández's motion to recuse implicate the integrity of this Court and public confidence in the judiciary.  The arguments in support of the motion to recuse, however, are unconvincing.

### A. Recusal Pursuant to Section 144

The recusal procedure set forth in section 144 provides, in its entirety, that:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.  Fernández must demonstrate "in [an] affidavit that the [undersigned] judge does have a personal bias or prejudice" in accordance "with the procedural requirements of [section 144]."  In re Martínez-Cátala, 129 F.3d 213, 218 (1st Cir. 1997) (footnote omitted).  Before determining whether recusal is warranted, the "judge *must* pass upon the legal sufficiency of the affidavit."  United States v. Giorgi, 840 F.2d 1022, 1034-35 (1st Cir. 1988) (holding that "Judge Pérez-Giménez correctly followed [section 144]; he reviewed the motion and supporting materials and found no legal basis for disqualification therein") (emphasis in original).

Fernández's "motion to change venue" does not contain an affidavit.  This defect renders section 144 inapplicable in this litigation.  See United States v. Chantal, 902 F.2d 1018, 1020 n.3 (1st Cir. 1990) (denying relief pursuant to section 144 because the "defendant has failed to support the motion with an affidavit"); Leland v. United States, 495 F. Supp. 2d 124, 127 (D. Me. 2007).  Accordingly, the Court need not transfer the recusal

Civil No. 17-2331 and Criminal No. 14-225 (FAB)          24

motion to another judge.  See In re United States, 158 F.3d 26, 34

(1st Cir. 1998) ("Although a trial judge faced with a § 455(a)

disqualification motion may, in her discretion, leave the motion

to a different judge, no reported case of accepted principle of

law compels her to do so.") (citations omitted)

**A. Recusal Pursuant to Section 455**

Section 455(a) directs "[a]ny justice, judge, or magistrate

judge of the United States [to] disqualify himself in any

proceeding in which his impartiality might reasonably be

questioned."  28 U.S.C. § 455(a); In re Martínez-Cátala, 129 F.3d

at 220 (holding that "where the appearance of partiality exists,

recusal is required regardless of the judge's own inner conviction

that he or she can decide the case fairly despite the

circumstances") (internal citation omitted); In re Bugler, 710

F.3d 42, 46 (1st Cir. 2013) ("The point under § 455(a) is not [the

judge's] actual state of mind at a particular time, but the

existence of facts that would prompt a reasonable question in the

mind of a well-informed person about the judge's capacity for

impartiality.").[3]   To trigger section 455(a), Fernández must

---

[3] Congress bifurcated section 455, providing for mandatory recusal in
subsections (a) and (b).  28 U.S.C. § 455.  Section 455(b)(1) enumerates five
circumstances in which disqualification is obligatory, none of which are
pertinent in this action.  See e.g., 28 U.S.C. § 455(b)(4) (recusal is mandatory
when the presiding judge "knows that he, individually or as a fiduciary, or his
spouse or minor child residing in his household, has a financial interest in
the subject matter in controversy").

present "more than subjective fears, unsupported accusations or unfounded surmise." In re United States, 158 F.3d at 30. Recusal is appropriate only when the circumstances "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." In re Boston Children's First, 244 F.3d at 167 (internal quotation omitted).

The Court "has a duty not to recuse himself or herself if there is no objective basis for recusal." In re United States, 441 F.3d 44, 67 (1st Cir. 2006); see United States v. Snyder, 235 F.3d 43, 45 (1st Cir. 2000) ("[U]nder § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise he has a duty to sit."). "While doubts ordinarily ought to be resolved in favor of recusal, the challenged judge enjoys a margin of discretion." In re United States, 158 F.3d at 30 (citation omitted). This discretion exists because "in many cases reasonable deciders may disagree." In re United States, 666 F.2d at 695. Each case implicating section 455(a) is sui generis, requiring a fact-specific analysis. In re Boston Children's First, 244 F.3d at 171; In re United States, 158 F.3d at 31. Ultimately, the question for an appellate court is "not whether it would have decided as did the trial court, but whether that decision cannot be defended as a rational conclusion supported by [a] reasonable

reading of the record." In re United States, 666 F.2d at 695.

### 1. The Motion to Recuse is Unsubstantiated

Because the section 2255 motion is based on Rule 11, Fernández argues that there is an "untenable conflict to fairly judge one's own professional acts without actual or apparent bias." (Civil Docket No. 2 at p. 1.)  Pursuant to Fernández's rationale, no court is capable of adjudicating a Rule 11 motion.  Courts routinely resolve allegations of judicial participation in plea negotiations, however, without transferring the matter to another judge.  See Cruz v. United States, Case No. 16-1789, 2019 LEXIS 175264 (D.P.R. Sept. 30, 2019) (Cerezo, J.); United States v. Cain, Case No. 16-103, 2020 U.S. Dist. LEXIS 2409 at *38 (D. Me. Jan. 7, 2020) ("I followed Rule 11(c)(1) and did not participate in any plea agreement negotiations between the prosecutor and Mr. Cain's defense lawyer."); United States v. Salahuddin, 608 F. Supp. 2d 1061, 1065 (E.D. Wis. 2009).

The motion to recuse relies exclusively on Fernández's subjective beliefs.  Surmise and conjecture cannot sustain recusal.  See In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir. 1989) ("[W]hen considering disqualification, the district court is not to use the standard of Caesar's wife, the standard of mere suspicion.") (internal quotation and citation omitted).  A fair and impartial judiciary is a lodestar of this democracy,

revered by this Court and essential to the peaceful resolution of civil and criminal disputes.  A "motion to recuse is a very serious matter and must have a factual foundation." In re United States, 441 F.3d at 65.  That foundation is lacking in this proceeding. Accordingly, the motion to recuse is **DENIED**.

## IV.  Conclusion

For the reasons set forth above, Fernández's motion to vacate, set aside, or correct his sentence in Criminal Case No. 14-225 (FAB) pursuant to section 2255 is **DENIED**.  (Civil Docket No. 1.)  The motion to recuse is also **DENIED**.  (Civil Docket No. 2.) This case is **DISMISSED, with prejudice**.  Judgment shall be entered accordingly.

If petitioner files a notice of appeal, no certificate of appealability shall issue because petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 26, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE